## UNITED STATES DISTRICT COURT

## DISTRICT OF NEBRASKA

| | |
|---|---|
| RACHAEL REESE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| vs. | |
| SIGNATURE PERFORMANCE, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff RACHAEL REESE ("Plaintiff") brings this Class Action Complaint against SIGNATURE PERFORMANCE, INC. ("Defendant" or "SPI"), in her individual capacity and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsels' investigations, and upon information and belief as to all other matters, as follows:

## I.  INTRODUCTION

1.      SPI is a healthcare administration provider and solutions provider that serves more than 40 medical facilities across the United States.

2.      Plaintiff brings this class action against Defendant SPI, who is based in Omaha, Nebraska, to seek damages for herself and other similarly situated SPI patients' who personally identifiable information ("PII") and protected health information ("PHI"), including but not limited to, names, dates of birth, Social Security Numbers, provider names, dates of services, medical record/case numbers, Medicare/Medicaid ID numbers, health insurance provider names, health insurance individual policy numbers and/or treatment costs, was accessed, stolen and/or otherwise impacted by cyber hackers. Plaintiff seeks to represent a class of all current and former patients or

any other person(s) impacted in the data breach at issue ("Class Members") to recover damages related to the breach, as well as other equitable relief, including, without limitation, injunctive relief designed to protect the very sensitive information of Plaintiff and other Class Members at issue.

3.      Plaintiff alleges SPI failed to provide timely, accurate and adequate notice to Plaintiff and Class Members who were or are current and former patients and employees of Defendant whose PII and PHI was handled by SPI.

4.      On or about February 9, 2024, SPI notified the Maine Attorney General's Office of a hacking incident. Under state and federal law, organizations must report breaching involving PHI within at least 60 days.

5.      On or about June 10, 2024, Defendant started sending data breach notice letters to impacted parties around the county.

6.      Based on the notice letters sent to Plaintiff and Class Members, unusual activity was detected on some computer systems. In response, Defendant initiated an investigation which revealed that an unauthorized third party had access to certain files that contained sensitive information related to current and former patients, and that such access occurred between January 17, 2024 and January 18, 2024 (the "Data Breach"). Yet, Defendant waited more than 5 months to notify impacted individuals of the Data Breach.

7.      The PII and PHI comprised in the Data Breach contained highly sensitive patient data, which is extremely valuable to hackers. The data includes, but is not limited to, names, dates of birth, Social Security Numbers, provider names, dates of services, medical record/case numbers, Medicare/Medicaid ID numbers, health insurance provider names, health insurance individual policy numbers and/or treatment costs.

8.      Plaintiff's and Class Members' unencrypted, unredacted PII was compromised due to SPI's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' sensitive data. Hackers obtained their PII because of its value in exploiting and stealing the identities of Plaintiff and similarly situated Class Members. The risks to these persons will remain for their respective lifetimes.

9.     Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of SPI's failure to: (i) adequately protect Plaintiff and Class Member PII; (ii) warn Plaintiff and Class Members of its inadequate information security practices; and (iii) effectively monitor SPI's network for security vulnerabilities and incidents. SPI's conduct amounts to negligence and violates federal and state statutes as set forth in the remainder of this complaint.

10.     Plaintiff and Class Members have suffered injury as a result of SPI's conduct. These injuries include: (i) lost or diminished value of PII and PHI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time;(iv) the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; change their usernames and passwords on their accounts; investigate, correct and resolve unauthorized debits; deal with spam messages and e-mails received subsequent to the Data Breach; (v) charges and fees associated with fraudulent charges on their accounts; and (vi) the continued and certainly an increased risk to their PII and PHI, which remains in SPI's possession and is subject to further unauthorized disclosures so long as SPI fails to undertake appropriate and adequate measures to protect the PII and PHI. These risks will remain for the lifetimes of Plaintiff and Class Members.

11.     SPI disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or at the very least negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII and PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As the result, Plaintiff's and Class Members' PII and PHI was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II.    PARTIES

12.    Plaintiff Rachael Reese is a resident and citizen of California. Ms. Reese received the *Notice of Data Breach* from SPI, dated June 10, 2024, by U.S. Mail.

13.    Defendant SPI is a healthcare administrative solutions company incorporated in Nebraska with its principal place of business located at 10250 Regency Circle, Suite 500, Omaha, Nebraska 68114.

14.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

15.    All of Plaintiff's claims stated herein are asserted against SPI and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.    JURISDICTION AND VENUE

16.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

17.    The District of Nebraska has personal jurisdiction over Defendant named in this action because Defendant and/or its parents or affiliates are headquartered in this District and Defendant conducts substantial business in Nebraska and this District through its headquarters, offices, parents, and affiliates.

18.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Background

21.     Defendant SPI is a healthcare administrative solutions company founded in 2004. SPI is a leader in the healthcare solutions industry, serving in Nebraska and 46 other states. SPI employs more than 1,200 individual and generates approximately $500 million in annual revenue.

22.     As a condition of receiving healthcare administrative services, SPI requires that its patients entrust it with highly sensitive PII and PHI.

23.     In its Notice of Privacy Practices, SPI promises individuals that it is "committed to the privacy of your health information" and says it is required by law to "use strict privacy standards to protect your health information from unauthorized use or disclosure."[1]

24.     Plaintiff and the Class Members, as current or former patients of SPI, reasonably relied (directly or indirectly) on this sophisticated healthcare administrative solutions company to keep their sensitive PII and PHI confidential; to maintain its system security; to use this information for business purposes only; and to make only authorized disclosures of their PII and PHI. Patients, in general, demand security to safeguard their PII and PHI, especially when medical information and other sensitive PII and PHI is involved.

25.     SPI had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII and PHI from involuntary disclosure to third parties.

26.     Defendant violated its own Privacy Policy by unlawfully disclosing Plaintiff's and Class Members' PHI to third parties.

**B.    The Data Breach**

27.     On or about February 9, 2024, SPI notified the Maine Attorney General's Office of a hacking incident.  Under state and federal law, organizations must report breaching involving PHI within at least 60 days.

28.     On or about June 10, 2024, Defendant started sending data breach notice letters to impacted parties around the county.

---

[1] See https://signatureperformance.com/privacypolicy

29.     Based on the notice letters sent to Plaintiff and Class Members, unusual activity was detected on some computer systems.  In response, Defendant initiated an investigation which revealed that an unauthorized third party had access to certain files that contained sensitive information related to current and former patients, and that such access occurred between January 17, 2024 and January 18, 2024 (the "Data Breach"). Yet, Defendant waited more than 5 moths to notify impacted individuals of the Data Breach.

30.     The PII and PHI comprised in the Data Breach contained highly sensitive patient data, which is extremely valuable to hackers. The data includes, but is not limited to, names, dates of birth, Social Security Numbers, provider names, dates of services, medical record/case numbers, Medicare/Medicaid ID numbers, health insurance provider names, health insurance individual policy numbers and/or treatment costs.

31.     Plaintiff and Class Members in this action were, upon information and belief, current and former patients of SPI whose PII and PHI was utilized by SPI for purposes of healthcare administrative solutions and other services. Plaintiff and Class Members first learned of the Data Breach when they received by U.S. Mail Notice of Data Breach letters dated June 10, 2024.

32.     Upon information and belief, the PII was not encrypted or properly redacted prior to the Data Breach.

33.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the PII and PHI of Plaintiff and the Class Members.

34.     SPI had obligations created by contract, industry standards, common law, and representations to keep Plaintiff's and Class Members' PII confidential, and to protect the PII and PHI from unauthorized access and disclosure.

35.     Plaintiff and Class Members provided their PII and PHI to SPI and/or its affiliates with the reasonable expectation that SPI as a sophisticated company would comply with its duty and obligations and representations to keep such information confidential and secure from unauthorized access.

6

36.     SPI failed to uphold its data security obligations to Plaintiff and Class Members. As a result, Plaintiff and Class Members are significantly harmed and will be at a high risk of identity theft and financial fraud for many years to come.

37.     SPI did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining, causing Plaintiff's and Class Members' PII and PHI to be exposed.

**C.      SPI Failed to Secure PII and Prevent Breaches**

38.     SPI could have prevented this Data Breach by properly encrypting or otherwise protecting their equipment and computer files containing PII.

39.     In notice letters regarding the Data Breach, SPI acknowledged the sensitive and confidential nature of the PII. To be sure, collection, maintaining, and protecting PII is vital to virtually all of SPI's business purposes. SPI acknowledged through its conduct and statements that the misuse or inadvertent disclosure of PII can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect PII from improper release or disclosure.

**D.      SPI Failed to Comply with HIPAA**

40.     As a regular and necessary part of its business, SPI collects and custodies the highly sensitive PHI of its patients and clients' patients. SPI is required under federal and state law to maintain the strictest confidentiality of the patient's PHI that it requires, receives, and collects, and SPI is further required to maintain sufficient safeguards to protect that PHI from being accessed by unauthorized third parties.

41.     As a HIPAA covered entity, SPI is required to ensure that it will implement adequate safeguards to prevent unauthorized use or disclosure of PHI, including by implementing requirements of the HIPAA Security Rule and to report any unauthorized use or disclosure of PHI, including incidents that constitute breaches of unsecured PHI as in the case of the Data Breach complained of herein.

42.     Due to the nature of SPI's business, which includes providing a range of medical services, SPI would be unable to engage in its regular business activities without collecting and aggregating PHI that it knows and understands to be sensitive and confidential.

43.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PHI, SPI assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PHI from unauthorized disclosure.

44.     As a medical services provider, SPI is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

45.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

46.     SPI is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").5 See 42 U.S.C. §17921, 45 C.F.R. § 160.103.

47.     HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information that is kept or transferred in electronic form.

48.     Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

49.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, et seq. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules

include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

50.     A Data Breach such as the one Defendant experienced, is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

51.     A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40.

52.     The Data Breach resulted from a combination of insufficiencies that demonstrate SPI failed to comply with safeguards mandated by HIPAA regulations.

**D.     The Data Breach was a Foreseeable Risk of which Defendant was on Notice**

53.     Data breaches occur every day in the United States. It is question of *when* not *if* they will occur. It is well known that PII, including Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

54.     In 2019, a record 1,473 data breaches occurred, resulting in approximately 164,683,455 sensitive records being exposed, a 17% increase from 2018.[2]

55.     Of the 1,473 recorded data breaches, 108 of them were in the banking/credit/financial industry, with the number of sensitive records being exposed exceeding 100 million. In fact, over 62% of the 164 million sensitive records exposed in data breaches in 2019 were exposed in those 108 breaches in the banking/credit/financial sector.[3]

---

[2] https://www.idtheftcenter.org/wp-content/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-Breach-Report_FINAL_Highres-Appendix.pdf (last accessed Sept. 12, 2022)

[3] *Id.*

56.     The 108 reported financial sector data breaches reported in 2019 exposed 100,621,770 sensitive records, compared to 2018 in which only 1,778,658 sensitive records were exposed in financial sector breaches.[4]

57.     Individuals place a high value not only on their PII, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

58.     Individuals are particularly concerned with protecting the privacy of their financial account information, which are the "secret sauce" that is "as good as your DNA to hackers."

59.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), SPI knew or should have known that its electronic records would be targeted by cybercriminals.

60.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

61.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, SPI failed to take appropriate steps to protect Plaintiff and Class Members' PII from being compromised.

**E.    At All Relevant Times SPI Had a Duty to Plaintiff and Class Members to Properly Secure their PII and PHI**

62.     At all relevant times, SPI had a duty to Plaintiff and Class Members to properly secure their PII and PHI, encrypt and maintain such information using industry standard methods,

---

[4] *Id* at p. 15.

train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to *promptly* notify Plaintiff and Class Members when SPI became aware that their PII may have been compromised.

63.     SPI's duty to use reasonable security measures arose as a result of the special relationship that existed between SPI, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class entrusted SPI and/or its affiliates with their PII and PHI when they were patients.

64.     SPI had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, SPI breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

65.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

    a.    Maintaining a secure firewall configuration;

    b.    Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.    Monitoring for suspicious or irregular traffic to servers;

    d.    Monitoring for suspicious credentials used to access servers;

    e.    Monitoring for suspicious or irregular activity by known users;

    f.    Monitoring for suspicious or unknown users;

    g.    Monitoring for suspicious or irregular server requests;

    h.    Monitoring for server requests for PII;

    i.    Monitoring for server requests from VPNs; and

    j.    Monitoring for server requests from Tor exit nodes.

66.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed

or attempted using the identifying information of another person without authority."[5] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[6]

67.    The ramifications of SPI's failure to keep its Class Members' PII secure are long lasting and severe. Once PII is stolen, particularly financial information, fraudulent use of that information and damage to victims is likely to continue for years.

**F.    The Value of Personal Identifiable Information**

68.    PII and PHI of data breach victims, like Plaintiff and Class Members, remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[7] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[8]

69.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card

---

[5] 17 C.F.R. § 248.201 (2013).

[6] *Id*.

[7] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Sept. 12, 2022).

[8] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at*: https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed Sept. 12, 2022).

information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[9]

70.      PII and PHI can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[10]

71.      Given the nature of SPI's Data Breach, as well as the delay in notification to Class Members, it is foreseeable that the compromised PII has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' PII may easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

72.      Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, basic credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[11] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as dates of birth).

73.      Plaintiff's and Class Members' injuries were directly and proximately caused by SPI's failure to implement or maintain adequate data security measures for the Class Members.

## G.      SPI Failed to Comply with FTC Guidelines

---

[9] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Sept. 12, 2022).

[10] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

[11] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, *available at*: https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f (last accessed Sept. 12, 2022).

74.     Federal and State governments have established security standards and issued recommendations to lessen the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[12]

75.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[13] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

76.     The FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[14]

77.     The FTC recommends that businesses:

    a.     Identify all connections to the computers where you store sensitive information.

    b.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

    c.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

    d.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email

---

[12] Federal Trade Commission, *Start With Security, available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Sept. 12, 2022).

[13] Federal Trade Commission, *Protecting Personal Information: A Guide for Business, available at*: https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed Sept. 12, 2022).

[14] FTC, *Start with Security*, *supra* note 34.

service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.  Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f.  Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.  Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.  Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.  Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

78.  The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

79.     Because Class Members entrusted SPI with their PII directly or indirectly through SPI, SPI had, and has, a duty to the Class Members to keep their PII secure.

80.     Plaintiff and the other Class Members reasonably expected that when they provide PII to SPI and/or its affiliates, that SPI would safeguard their PII.

81.     SPI was at all times fully aware of its obligation to protect the personal data of patients, including Plaintiff and members of the Classes. SPI was also aware of the significant repercussions if it failed to do so.

82.     SPI's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data including Plaintiff's and Class Members' full names, Social Security numbers, and other highly sensitive and confidential information, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

## H.     **Plaintiff and Class Members Have Suffered Concrete Injury as a Result of Defendant's Inadequate Security and the Data Breach it Allowed**

83.     Plaintiff and Class Members reasonably expected that Defendant would provide adequate security protections for their PII and PHI, and Class Members provided Defendant and/or it affiliates with sensitive personal information, including their Social Security numbers.

84.     Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant for services, Plaintiff and other reasonable Class Members understood and expected that their PII and PHI would be protected with data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected. As such, Plaintiff and the Class Members suffered pecuniary injury.

85.     Cybercriminals capture PII and PHI to exploit it; the Class Members are now, and for the rest of their lives will be, at a heightened risk of identity theft. Plaintiff has also incurred (and

will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

86.    The cybercriminals who obtained the Class Members' PII and PHI may exploit the information they obtained by selling the data in so-called "dark markets." Having obtained these names, contact information, financial information, and other PII and PHI, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

    a.    obtaining employment;

    b.    obtaining a loan;

    c.    applying for credit cards or spending money;

    d.    filing false tax returns;

    e.    stealing Social Security and other government benefits; and

    f.    applying for a driver's license, birth certificate, or other public document.

87.    In addition, if a Class Member's PHI and PHI is used to create false identification for someone who commits a crime, the Class Member may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

88.    As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.

89.    Furthermore, PII and PHI has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.[15]

90.    Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and

---

[15] *Id.*

continuing increased risk of identity theft and identity fraud.[16] Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[17] Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[18] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that have not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Class Members' PII will do so at a later date or re-sell it.

91.    As a result of the Data Breach, Plaintiff and Class Members have already suffered damages.

**I.    <u>Plaintiff Rachael Reese's Experience</u>**

92.    Plaintiff Reese provided her personal information to SPI and/or its affiliate Adventist Health Systems – Tulare in conjunction with health care services she received in Tulare County, California.

93.    As part of her involvement with Defendant and Adventist Health Systems – Tulare, Plaintiff entrusted her PII and PHI, and other personally identifiable information, with the reasonable expectation and understanding that SPI and Adventist Health Systems – Tulare would take at a minimum industry standard precautions to protect, maintain, and safeguard that information from unauthorized use or disclosure, and would timely notify her of any data security incidents related to her. Plaintiff would not have permitted her PII and PHI to be given to SPI and Adventist

---

[16] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), http://www.iii.org/insuranceindustryblog/?p=267 (last accessed December 10, 2021).

[17] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php (last accessed Sept. 12, 2022).

[18] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, (*available at* https://www.it.northwestern.edu/bin/docs/TheConsumerDataInsecurityReport_byNCL.pdf) (last accessed Sept. 12, 2022).

Health Systems – Tulare had she known it would not take reasonable steps to safeguard her PII and PHI.

94.     On or about June 10, 2024, over five months after SPI's breach began, Plaintiff received a letter from SPI notifying her that her PII and PHI had been improperly accessed and taken by unauthorized third parties. The notice indicated that Plaintiff's PII was compromised as a result of the Data Breach.

95.     As a result of the Data Breach, Plaintiff has or will make reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports, financial account statements, and/or personal records for any indications of actual or attempted identity theft or fraud.

96.     Plaintiff suffered actual injury from having her PII and PHI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII and PHI, a form of property that SPI obtained from Plaintiff; (b) violation of her privacy rights; (c) the theft of her PII and PHI; and (d) imminent and impending injury arising from the increased risk of identity theft and fraud.

97.     Plaintiff has recently experienced instances of fraudulent charges on her bank account since the Data Breach. As a result, she spends unnecessary time dealing with these charges, had to spend time closing her account and dealing this with fraud, and is in the process of opening a new account.

98.     As a result of the Data Breach, Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

99.     The Data Breach has caused Plaintiff to suffer significant anxiety and stress, which has been compounded by the fact that her Social Security number and other intimate details are in the hands of criminals.

100.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and/or money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In

addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for years to come.

101.    Plaintiff has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## V.    CLASS ALLEGATIONS

102.    Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated.

103.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:
All persons residing in the United States whose PII and/or PHI was compromised in the 2024 data breach announced by SPI in June 2024. (the "Nationwide Class").

104.    Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3) and (c)(4), Plaintiff seeks to represent the following subclass:

All persons residing in California whose PII and/or PHI was compromised in the 2024 data breach announced by SPI in June 2024. (the "California Subclass").

105.    The Nationwide Class and California Subclass are collectively referred to herein as "Class" or "Classes" unless otherwise stated.

106.    Excluded from the Classes are the following individuals and/or entities: SPI, and SPI's parents, subsidiaries, affiliates, officers and directors, and any entity in which SPI has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

107.    Plaintiff reserves the right to modify or amend the definition of the proposed class and any future subclass before the Court determines whether certification is appropriate.

108.    Numerosity, Fed R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are 2,501,324 individuals whose PHI may have been improperly accessed in the Data Breach, and each Class is apparently identifiable within Defendant's records.

109.    Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exists and predominates over any questions affecting only individual Class Members. These include:

a.    Whether and to what extent Defendant had a duty to protect Plaintiff's and Class Members' PII and PHI;

b.    Whether Defendant had duties not to disclose the Plaintiff's and Class Members' PII and PHI to unauthorized third parties;

c.    Whether Defendant had duties not to use Plaintiff's and Class Members' PII and PHI for non-business purposes;

d.    Whether Defendant failed to adequately safeguard Plaintiff's and Class Members' PII and PHI;

e.    Whether and when Defendant actually learned of the Data Breach;

f.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

g.    Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

h.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.    Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and Class Members' PII and PHI;

k.  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

110.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all had their PHI compromised as a result of the Data Breach, due to Defendant's misfeasance.

111.  <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

112.  <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intend to prosecute this action vigorously.

113.  <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy

alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

114.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

115.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

116.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

117.    Unless a Class-wide injunction is issued, Defendant may continue in their failure to properly secure and unlawful disclosure of the PHI of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

118.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

119.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

b.    Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

c.    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.    Whether a contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that contract;

e.    Whether Defendant breached the contract;

f.    Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

g.    Whether Defendant breached the implied contract;

h.    Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

i.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

j.    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and Class Members' PII and PHI;

k.   Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## COUNT I

### NEGLIGENCE
### (On Behalf of Plaintiff and the Nationwide Class)

120.   Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

121.   As a condition of receiving medical services, Plaintiff and Class Members, are obligated to provide SPI and/or its affiliates with certain PII and PHI, including but not limited to, names, dates of birth, Social Security Numbers, provider names, dates of services, medical record/case numbers, Medicare/Medicaid ID numbers, health insurance provider names, health insurance individual policy numbers and financial account numbers.

122.   Plaintiff and Class Members entrusted their PII and PHI to SPI and its affiliates on the premise and with the understanding that SPI would safeguard their information, use their PII and PHI for legitimate business purposes only, and/or not disclose their PII and PHI to unauthorized third parties.

123.   SPI has full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiff and Class Members could and would suffer if the PII and PHI were wrongfully disclosed.

124.   SPI knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and/or using of the PII and PHI involved an unreasonable risk of harm to Plaintiff and Class Members, even if the harm occurred through the criminal acts of a third party.

125.   SPI had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing SPI's security protocols to ensure that Plaintiff's and Class Members' information in SPI's possession was adequately secured and protected.

126.    SPI also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII and PHI.

127.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of SPI's business, for which the diligent protection of PII and PHI is a continuous forefront issue.

128.    Plaintiff and Class Members were the foreseeable and probable victims of SPI's inadequate security practices and procedures. SPI knew of should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiff and the Class, the critical importance of providing adequate security of that PII and PHI, and the necessity for encrypting PII and PHI stored on SPI's systems.

129.    SPI's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. SPI's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. SPI's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiff's and Class Members' PII, including basic encryption techniques freely available to SPI.

130.    Plaintiff and Class Members had no ability to protect their PII and PHI that was in, and possibly remains in, SPI's possession.

131.    SPI was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

132.    SPI had and continues to have a duty to adequately and promptly disclose that Plaintiff's and Class Members' PII and PHI within SPI's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

133.    SPI had a duty to employ proper procedures to prevent the unauthorized dissemination of Plaintiff's and Class Members' PII and PHI.

134.    SPI has admitted that the PII and PHI of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

135.    SPI, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII during the time the PII was within SPI's possession or control.

136.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

137.    These foregoing frameworks are existing and applicable industry standards in the financial services industry, and Defendant failed to comply with these accepted standards thereby opening the door to the cyber incident and causing the data breach.

138.    SPI improperly and inadequately safeguarded Plaintiff's and Class Members' PII and PHI in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

139.    SPI failed to heed industry warnings and alerts to provide adequate safeguards to protect patient PII and PHI in the face of increased risk of theft.

140.    SPI, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of the PII and PHI.

141.    SPI, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

142.    But for SPI's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' PII and PHI would not have been compromised.

143.    There is a close causal connection between SPI's failure to implement security

measures to protect Plaintiff's and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class. Plaintiff's and Class Members' PII and PHI was lost and accessed as the proximate result of SPI's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures.

144.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as SPI, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of SPI's duty in this regard.

145.    SPI violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. SPI's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

146.    SPI's violation of Section 5 of the FTC Act constitutes negligence *per se*.

147.    Plaintiff and Class members are within the class of persons that the FTC Act was intended to protect.

148.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class.

149.    As a direct and proximate result of SPI's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

(i)      actual identity theft;

(ii)     the loss of the opportunity of how their PII and PHI is used;

(iii)    the compromise, publication, and/or theft of their PII and PHI;

(iv)    out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI;

(v)     lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

(vi)    costs associated with placing freezes on credit reports;

(vii)   the continued risk to their PII and PHI, which remain in SPI's possession and is subject to further unauthorized disclosures so long as SPI fails to undertake appropriate and adequate measures to protect the PII in their continued possession;

(viii)  future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and

(ix)    the diminished value of SPI's goods and services they received.

150.    As a direct and proximate result of SPI's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

151.    Additionally, as a direct and proximate result of SPI's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remains in SPI's possession and is subject to further unauthorized disclosures so long as SPI fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

## <u>COUNT II</u>

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

152.    Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

153.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for providing health care administrative services to patients and former patients.

154.    Defendant collected, maintained, and stored the PII and PHI of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits it received on behalf of the Plaintiff and Class Members.

155.    The money that patients paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data security adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII.

156.    Defendant failed to implement—or adequately implement—those data security practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

157.    As a result of Defendant's failure to implement data security practices, procedures, and programs to secure sensitive PII and PHI, Plaintiff and Class Members suffered actual damages in an amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff's PII and PHI.

158.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to implement the data security measures adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII and PHI and that the patients paid for.

159.    As a direct and proximate result of Defendant's decision to profit rather than provide adequate security, and Defendant's resultant disclosures of Plaintiff's and Class Members' PII, Plaintiff and Class Members suffered and continue to suffer considerable injuries in the forms of time and expenses mitigating harms, diminished value of PII and PHI, loss of privacy, and a present increased risk of harm.

## COUNT III

**BREACH OF EXPRESS CONTRACT**
**(On Behalf of Plaintiff and the Nationwide Class)**

160.    Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

163.    This count is plead in the alternative to Count II (Unjust Enrichment) above.

164.    Plaintiff and Class Members allege that they were the express, foreseeable, and intended beneficiaries of valid and enforceable express contracts between Defendant and its former and current customers, contract(s) that (upon information and belief) include obligations to keep sensitive PII and PHI private and secure.

165.    Upon information and belief, these contracts included promises made by Defendant that expressed and/or manifested intent that the contracts were made to primarily and directly benefit the Plaintiff and the Class (all customers entering into the contracts), as Defendant's service was for health care administrative services for Plaintiff and the Class, but also safeguarding the PII and PHI entrusted to Defendant in the process of providing these services.

166.    Upon information and belief, Defendant's representations required Defendant to implement the necessary security measures to protect Plaintiff's and Class Members' PII and PHI.

167.    Defendant materially breached its contractual obligation to protect the PII and PHI of Plaintiff and Class Members when the information was accessed and exfiltrated by unauthorized personnel as part of the Data Breach.

168.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

169.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release, disclosure of their PII and PHI, the loss of control of their PII and PHI, the present risk of suffering additional damages, and out-of-pocket expenses.

170.    Plaintiff and Class Members are entitled to compensator, consequential, and nominal damages suffered as a result of the Data Breach.

## COUNT IV

### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

171.    Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

172.    This count is plead in the alternative to Count II (Unjust Enrichment) above.

173.    Plaintiff's and Class Members' PII was provided to Defendant as part of health care administrative services that Defendant provided to Plaintiff and Class Members.

174.    Plaintiff and Class Members agreed to pay Defendant for its services.

175.    Defendant and the Plaintiff and Class Members entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the security of Plaintiff's and Class Members' PII and PHI, whereby, Defendant was obligated to take reasonable steps to secure and safeguard Plaintiff's and Class Members' PII and PHI.

176.    Defendant had an implied duty of good faith to ensure that the PII and PHI of Plaintiff and Class Members in its possession was only used in accordance with its contractual obligations.

177.    Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and PHI and to comply with industry standards and applicable laws and regulations for the security of this information.

178.    Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI.

179.    Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' PII and PHI, resulting in the Data Breach.

180.    Defendant further breached the implied contract by providing untimely notification to Plaintiff and Class Members who may already be victims of identity fraud or theft or are at present risk of becoming victims of identity theft or fraud.

181.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

182.    As a result of Defendant's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain.

183.    Had Defendant disclosed that its data security was inadequate, neither the Plaintiff or Class Members, nor any reasonable person would have entered into such contracts with Defendant.

184.    As a result of Data Breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their PII and PHI, as well as the loss of control of their PII and PHI, and remain at present risk of suffering additional damages.

185.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

186.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT V

### INVASION OF PRIVACY
### (On Behalf of Plaintiff and the Nationwide Class)

187.    Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

188.    Plaintiff and Class Members have a legally protected privacy interest in their PII and PHI, which is and was collected, stored, and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access and publication of their PII to criminal actors, as occurred with the Data Breach. The PII and PHI of Plaintiff and Class Members contain intimate details of a highly personal nature, individually and in the aggregate.

189.    Plaintiff and Class Members reasonably expected that Defendant would protect and secure their PII and PHI from unauthorized parties and that their PII and PHI would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

190.    Defendant intentionally intruded into Plaintiff's and Class Members' seclusion by disclosing without permission their PII and PHI to a third party.

191.    By failing to keep Plaintiff's and Class Members' PII and PHI secure, and disclosing PII and PHI to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion by, inter alia:

    a.  intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

    b.  invading their privacy by improperly using their PII and PHI obtained for a specific purpose for another purpose, or disclosing it to unauthorized persons;

    c.  failing to adequately secure their PII and PHI from disclosure to unauthorized persons; and

    d.  enabling the disclosure of their PII and PHI without consent.

192.    This invasion of privacy resulted from Defendant's intentional failure to properly secure and maintain Plaintiff's and Class Members' PII and PHI, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

193.    Plaintiff and Class Members' PII and PHI is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff's, and Class Members' PII and PHI, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

194.    The disclosure of Plaintiff's and Class Members' PII and PHI to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

195.    Defendant's willful and reckless conduct that permitted unauthorized access, exfiltration and disclosure of Plaintiff's and Class Members' intimate and sensitive PII and PHI is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

196.    The unauthorized access, exfiltration, and disclosure of Plaintiff's and Class Members' PII and PHI was without their consent, and in violation of various statutes, regulations and other laws.

197.    As a direct and proximate result of Defendant's intrusion upon seclusion, Plaintiff and Class Members suffered injury and sustained actual losses and damages as alleged herein. Plaintiff and Class Members alternatively seek an award of nominal damages.

## COUNT VI

**(Violation of the California Confidentiality of Medical Information Act ("CMIA"),
Cal. Civ. Code § 56, et seq.
(On behalf of Plaintiff and the California Subclass)**

198.    Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

199.    Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization[.]"

200.    SPI is a "contractor" within the meaning of Civil Code § 56.05(d) within the meaning of Civil Code § 56.06 and/or a "business organized for the purpose of maintaining medical information" and/or a "business that offers software or hardware to consumers . . . that is designed to maintain medical information" within the meaning of Civil Code § 56.06(a) and (b), and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), for "patients" of SPI, within the meaning of Civil Code § 56.05(k).

201.    Plaintiff and class members are "patients" within the meaning of Civil Code §
56.05(k) and are "endanger[ed]" within the meaning of Civil Code § 56.05(e) because Plaintiff and
Class members fear that disclosure of their medical information could subject them to harassment
or abuse.

202.    Plaintiff and class members, as patients, had their individually identifiable "medical
information," within the meaning of Civil Code § 56.05(j), created, maintained, preserved, and
stored on SPI's computer network at the time of the unauthorized disclosure.

203.    SPI, through inadequate security, allowed unauthorized third-party access to
Plaintiff's and class members' medical information, without the prior written authorization of
Plaintiff and class members, as required by Civil Code § 56.10 of the CMIA.

204.    In violation of Civil Code § 56.10(a), SPI disclosed Plaintiff's and class members'
medical information without first obtaining an authorization.  Plaintiff's and class members' medical
information was viewed by unauthorized individuals as a direct and proximate result of SPI's
violation of Civil Code § 56.10(a).

205.    In violation of Civil Code § 56.10(e), SPI further disclosed Plaintiff's and class
members' medical information to persons or entities not engaged in providing direct health care
services to Plaintiff or class members, or to their providers of health care or health care service plans
or their insurers or self-insured employers.

206.    SPI violated Civil Code § 56.101 of the CMIA through its willful and knowing failure
to maintain and preserve the confidentiality of the medical information of Plaintiff and the class
members.  SPI's conduct with respect to the disclosure of confidential PII/PHI was willful and
knowing because SPI designed and implemented the computer network and security practices that
gave rise to the unlawful disclosure.

207.    In violation of Civil Code § 56.101(a), SPI created, maintained, preserved, stored,
abandoned, destroyed, or disposed of Plaintiff's and class members' medical information in a manner
that failed to preserve and breached the confidentiality of the information contained therein.
Plaintiff's and class members' medical information was viewed by unauthorized individuals as a

direct and proximate result of SPI's violation of Civil Code § 56.101(a). 380. In violation of Civil Code § 56.101(a), SPI negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of Plaintiff's and class members' medical information. Plaintiff's and class members' medical information was viewed by unauthorized individuals as a direct and proximate result of SPI's violation of Civil Code § 56.101(a).

208. Plaintiff's and class members' medical information that was the subject of the unauthorized disclosure included "electronic medical records" or "electronic health records" as referenced by Civil Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

209. In violation of Civil Code § 56.101(b)(1)(A), SPI's electronic health record system or electronic medical record system failed to protect and preserve the integrity of electronic medical information. Plaintiff's and class members' medical information was viewed by unauthorized individuals as a direct and proximate result of SPI's violation of Civil Code § 56.101(b)(1)(A).

210. SPI violated Civil Code § 56.36 of the CMIA through its failure to maintain and preserve the confidentiality of the medical information of Plaintiff and the class members.

211. As a result of SPI's above-described conduct, Plaintiff and class members have suffered damages from the unauthorized disclosure and release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10, 56.101, 56.36. 385. As a direct and proximate result of SPI's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the unauthorized disclosure, and violation of the CMIA, Plaintiff and class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud and medical fraud-risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII/PHI, (iv) statutory damages under the California CMIA, (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

212.    Plaintiff, individually and for each member of the class, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1), and actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2), injunctive relief, as well as punitive damages of up to $3,000 per Plaintiff and each class member, and attorneys' fees, litigation expenses and court costs, pursuant to Civil Code § 56.35.

## COUNT VII

**Violation of the California Customer Records Act,
Cal. Civ. Code §§ 1798.80 et seq.,
(On behalf of Plaintiffs and the California Subclass)**

213.    Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

214.    Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

215.    Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

216.    Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

217.    Plaintiffs and members of the California subclass are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to Defendant, directly and/or indirectly, for the purpose of obtaining a service from Defendant.

218.    The personal information of Plaintiffs and the California subclass at issue in this

lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information Defendant collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

219.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the California subclass's personal information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiffs and the California subclass. Specifically, Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information of Plaintiffs and the California subclass from unauthorized access, destruction, use, modification, or disclosure. Defendant further subjected Plaintiffs' and the California subclass's nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

220.    As a direct and proximate result of Defendant's violation of its duty, the unauthorized access, destruction, use, modification, or disclosure of the personal information of Plaintiffs and the California subclass included hackers' access to, removal, deletion, destruction, use, modification,

disabling, disclosure and/or conversion of the personal information of Plaintiffs and the California subclass by the ransomware attackers and/or additional unauthorized third parties to whom those cybercriminals sold and/or otherwise transmitted the information.

221.    As a direct and proximate result of Defendant's acts or omissions, Plaintiffs and the California subclass were injured and lost money or property including, but not limited to, the loss of Plaintiffs' and the subclass's legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses described above. Plaintiff seeks compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

222.    Moreover, the California Customer Records Act further provides: "A person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82.

223.    Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under §1798.82(d):

  a.   The name and contact information of the reporting person or business subject to this section;

  b.   A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

  c.   If the information is possible to determine at the time the notice is provided, then any of the following:

    i.   the date of the breach,

    ii.   the estimated date of the breach, or

    iii.   the date range within which the breach occurred. The notification shall also include the date of the notice;

  d.   Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e.  A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

f.  The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

g.  If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services, if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

224.  Defendant failed to provide the legally compliant notice under § 1798.82(d) to Plaintiffs and members of the California subclass. On information and belief, to date, Defendant has not sent written notice of the data breach to all impacted individuals.  As a result, Defendant has violated § 1798.82 by not providing legally compliant and timely notice to all class members. Because not all members of the class have been notified of the breach, members could have taken action to protect their personal information, but were unable to do so because they were not timely notified of the breach.

225.  On information and belief, many class members affected by the breach, have not received any notice at all from Defendant in violation of Section 1798.82(d).

226.  As a result of the violations of Cal. Civ. Code § 1798.82, Plaintiffs and class members suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

227.  As a direct consequence of the actions as identified above, Plaintiffs and class members incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the

breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal, financial, and payroll information disclosed, that they would not have otherwise incurred, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

## COUNT VIII

**Violation of the California Unfair Competition Law,
Cal. Bus. & Prof. Code §17200 et seq.
(On behalf of Plaintiffs and the California Subclass)**

228.    Plaintiff hereby re-alleges and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

229.    SPI is a "person" defined by Cal. Bus. & Prof. Code § 17201.

230.    SPI violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

231.    SPI' "unfair" acts and practices include:

a.    SPI failed to implement and maintain reasonable security measures to protect Plaintiff's and California subclass members' personal information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the SPI data breach. SPI failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents and known coding vulnerabilities in the industry;

b.    SPI's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45), California's Customer Records Act (Cal. Civ. Code § 1798.80 *et seq.*), and California's Confidentiality of Medical Information Act (Cal. Civ. Code § 56);

c. SPI's failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of SPI's inadequate security, consumers could not have reasonably avoided the harms that SPI caused; and

d. Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

232. SPI has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Confidentiality of Medical Information Act (Cal. Civ. Code § 56), California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq*., the FTC Act, 15 U.S.C. § 45, and California common law.

233. SPI's unlawful, unfair, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and California subclass members' personal information, which was a direct and proximate cause of the SPI data breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the SPI data breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, and California's Confidentiality of Medical Information Act (Cal. Civ. Code § 56), which was a direct and proximate cause of the SPI data breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and California subclass members' personal information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*., and California's Confidentiality of Medical Information Act (Cal. Civ. Code § 56);

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and California subclass members' personal information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq*., and California's Confidentiality of Medical Information Act (Cal. Civ. Code § 56).

234.    SPI's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of SPI's data security and ability to protect the confidentiality of consumers' personal information.

235.    As a direct and proximate result of SPI's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California subclass members were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

236.    SPI's violations were, and are, willful, deceptive, unfair, and unconscionable.

237.    Plaintiff and class members have lost money and property as a result of SPI's conduct in violation of the UCL, as stated herein and above.

238.    By deceptively storing, collecting, and disclosing their personal information, SPI has taken money or property form Plaintiff and class members.

239.    SPI acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and California subclass members' rights. Past data breaches put it on notice that its security and privacy protections were inadequate.

240.    Plaintiff and California subclass members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from SPI's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all Class Members, requests judgment against SPI and that the Court grant the following:

A.    For an Order certifying the Nationwide Classes and appointing Plaintiff and her Counsel to represent the certified Nationwide Class;

B.    For equitable relief enjoining SPI from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' PII and PHI, and from refusing to issue prompt, complete, any accurate disclosures to the Plaintiff and Class;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including but not limited to an order:

i.    prohibiting SPI from engaging in the wrongful and unlawful acts described herein;

ii.    requiring SPI to protect, including through encryption, all data collected through the

course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii. requiring SPI to delete, destroy, and purge the personal identifying information of Plaintiff and Class unless SPI can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and the Class;

iv. requiring SPI to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff's and Class Members' personal identifying information;

v. prohibiting SPI from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database;

vi. requiring SPI to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on SPI's systems on a periodic basis, and ordering SPI to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring SPI to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring SPI to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring SPI to segment data by, among other things, creating firewalls and access controls so that if one area of SPI's network is compromised, hackers cannot gain access to other portions of SPI's systems;

x. requiring SPI to conduct regular database scanning and securing checks;

xi. requiring SPI to establish an information security training program that includes at least annual information security training for all employees, with additional training

to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.    requiring SPI to conduct internal training and education routinely and continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    requiring SPI to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with SPI's policies, programs, and systems for protecting personal identifying information;

xiv.    requiring SPI to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor SPI's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    requiring SPI to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring SPI to implement logging and monitoring programs sufficient to track traffic to and from SPI's servers; and

xvii.    for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate SPI's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.    For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.      For an award of lifetime identity theft and credit monitoring services for Plaintiff and the Class;

F.      For an award of punitive damages;

G.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

H.      For prejudgment interest on all amounts awarded; and

I.      Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Date: June 18, 2024           Respectfully Submitted,

*/s/M. Anderson Berry*
M. Anderson Berry (SBN 262789)
*Admitted Pro Hac Vice*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, California 95825
Telephone: (916) 239-4778
Facsimile:  (916) 924-1829
E-Mail: aberry@justice4you.com

*/s/M. Jason M. Wucetich*
Jason M. Wucetich (SBN 222113)
*Pro Hac Vice Application Pending*
**WUCETICH & KOROVILAS LLP**
222 North Pacific Coast Highway, Suite 2000
El Segundo, California 90245
Telephone: (310) 335-2001
Facsimile:  (310) 364-5201
E-Mail: jason@wukolaw.com

*Attorneys for Plaintiff and the Proposed Class*